## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JD FLOYD**                                    **CIVIL ACTION**

**VERSUS**                                      **NO: 19-8769**

**JOHN DILLMANN ET AL.**                        **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Defendant Stephen London's Motion to Dismiss (Doc. 140). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises from Plaintiff JD Floyd's wrongful conviction and imprisonment for the murder of William Hines, Jr.

In November 1980, William Hines, Jr. and Rodney Robinson were murdered in the New Orleans French Quarter, one mile apart and close in time to one another. Hines, a gay white male, was found nude and stabbed to death in his bedroom. There were no signs of forced entry, and one glass of alcohol was found in Hines's bedroom, another in his kitchen. Friends of Hines told Detective John Dillmann, the lead detective on the murder investigation, that Hines would often attempt to pick up sexual partners while intoxicated. The New Orleans Police Department (NOPD) Crime Laboratory analyzed evidence

recovered from the scene and found hairs belonging to an African American person on Hines's bed sheets. Because Hines's body was not discovered until at least 24 hours after his death, any evidence of seminal fluid or spermatozoa was undetectable. The blood at the scene, however, was from a person with Type A blood. Fingerprints lifted from a bottle of whiskey on Hines's kitchen table did not match the victim's or Plaintiff's prints, though this evidence was never disclosed to the defense.

About three days after Hines's murder, Robinson was stabbed to death at a nearby hotel. Detective Michael Rice acted as lead detective on the Robinson investigation. Robinson, a gay Black male, was found with a blue knit cap stained with Type O blood, which was Robinson's blood type. The knit cap also contained hair belonging to an African American—but not, according to the NOPD lab, Robinson's. Inside Robinson's hotel room, police found drinking glasses on each end table next to the bed and a white tissue paper with seminal fluid on it. An analysis of the semen revealed that it was produced by someone with Type A blood. Fingerprints taken from the drinking glasses and the passenger side of Robinson's car did not match Plaintiff's, though again this was not revealed to Plaintiff until years after trial. Additionally, a hotel security guard reported that she saw an African American man running from the back door of the hotel shortly before the police arrived.

Initially, Detectives Dillmann and Rice investigated Black men as the lead suspects in the Hines and Robinson cases. Later, after a tip from someone that Plaintiff had made incriminating statements to him, the detectives shifted their focus to Plaintiff—a white male with Type B blood. At the time, Plaintiff

was living in the French Quarter as a "drifter" with a drug and alcohol problem. Plaintiff has an intellectual disability and an IQ of 59. On January 19, 1981, Detective Dillmann and NOPD Officer John Reilly found Plaintiff drinking at the Louisiana Purchase Bar in the French Quarter. They bought him at least one drink before taking him outside to arrest him. At NOPD's Homicide Office, Detective Dillmann and Officer Reilly, joined by Detective Rice, interrogated Plaintiff, who initially denied involvement in the murders but later broke down and confessed. The officers obtained signed confessions to both murders from Plaintiff. Plaintiff alleges these officers fabricated the confessions and included details in them known only to the perpetrator of the murders. Plaintiff further alleges that the officers then physically assaulted, threatened, and coerced him into signing the confessions.

Plaintiff was indicted on two counts of second-degree murder. He then waived his right to a jury trial and proceeded to a joint bench trial in Orleans Parish Criminal District Court. After Plaintiff was found guilty of Hines's murder but was acquitted of Robinson's, he was sentenced to life imprisonment without parole. The Louisiana Supreme Court affirmed his conviction and sentence.[1]

In 2008, the Innocence Project New Orleans (IPNO) discovered copies of the NOPD Latent Print Unit's logbook that revealed that Plaintiff was not the source of fingerprints left at both murder scenes. This evidence was generated pre-trial yet never disclosed to Plaintiff or his counsel. That same year, IPNO also discovered that John Clegg, a close friend of Hines, had told Detective

---

[1] State v. Floyd, 435 So. 2d 992 (La. 1983).

Dillmann during the investigation that Hines had a distinct sexual preference for Black males. Dillmann had testified at trial that he was told that Hines had sexual relations with both Black and white males.

In light of this new evidence, and on a motion for federal habeas relief under 28 U.S.C. § 2254, another section of this Court found that Plaintiff had satisfied the *Carrier* standard of "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent" and that therefore his habeas petition was not untimely.[2] The Court then granted habeas relief based on the State's *Brady* violations of withholding the exculpatory fingerprint results and the statement from Clegg.[3] The State was ordered to retry or release Plaintiff within 120 days of the decision. This order was stayed when the State appealed to the Fifth Circuit. The Fifth Circuit affirmed this Court's rulings on both grounds: evidence of Plaintiff's actual innocence meant his petition was not untimely, and he was entitled to relief on the merits based on his *Brady* claims.[4] Once the United States Supreme Court denied cert on the State's appeal, all charges against Plaintiff were dismissed.

Based on his wrongful imprisonment, Plaintiff brings clams under 42 U.S.C. § 1983 and state law against the City of New Orleans, former District Attorney Leon Cannizzaro, Jr., District Attorney Jason Williams, and New Orleans Police Department Detective John Dillman, Detective Michael Rice, and Lieutenant Stephen London. In the instant Motion, Defendant London

---

[2] Murray v. Carrier, 477 U.S. 478, 496 (1986); *see also* Floyd v. Cain, CIVIL ACTION NO: 11-2819, 2016 WL 4799093 (E.D. La. Sept. 14, 2016) (Vance, J.).
[3] *See* Floyd v. Vannoy, CIVIL ACTION NO. 11-2819, 2017 WL 1837676 (E.D. La. May 8, 2017) (Vance, J.).
[4] *See* Floyd v. Vannoy, 894 F.3d 143 (5th Cir. 2018).

moves for dismissal of the § 1983 claims against him, arguing that he is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and to qualified immunity. Plaintiff opposes.

## **LEGAL STANDARD**

A Rule 12(c) motion is subject to the same standard that is applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim.[5] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[6] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[8] The court need not, however, accept as true legal conclusions couched as factual allegations.[9] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[10] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[11] The court's review is limited to the complaint

---

[5] Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).

[6] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[7] *Id.*

[8] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Id.*

[11] *Lormand*, 565 F.3d at 255–57.

and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[12]

## LAW AND ANALYSIS

Plaintiff's Complaint asserts the following five § 1983 claims against Defendant London: (1) a claim for deprivation of liberty without due process, (2) a claim for unlawful seizure and detention without probable cause, (3) a claim for failure to intervene, (4) a civil rights conspiracy claim, and (5) a claim for supervisory liability. Defendant London argues that Plaintiff's Complaint does not allege sufficient facts implicating him specifically to support any of these claims.

Indeed, Plaintiff's Complaint only specifically references London in four instances. Those paragraphs state as follows:

> 28. Defendant Stephen London was at all times relevant herein a duly appointed and acting Lieutenant of the NOPD, acting under color of law pursuant to the statutes, ordinances, regulations, policies, customs, and usage of New Orleans and the State of Louisiana. He is sued in his individual capacity.

> 58. As Lieutenant Stephen London recalled when interviewed by [Innocence Project New Orleans] in 2009, the *Times-Picayune* was "all over" the NOPD to solve the murder of one of their own. The Robinson murder was also big news—making the front page of *Times-Picayune*'s Friday, November 28th evening edition and its Saturday, November 29th morning edition.

> 215. Defendants London and John Doe Supervisors were personally and directly involved in the case against Mr. Floyd and

---

[12] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

knew, or in the absence of their deliberate indifference, recklessness, and gross negligence should have known, that their subordinate officers had deprived Mr. Floyd of his clearly established constitutional rights through misconduct that included but was not limited to coercing and fabricating confessions from Mr. Floyd; beating and threatening Mr. Floyd; deliberately ignoring evidence of Mr. Floyd's innocence; and violating Defendants' ongoing affirmative obligation to come forward with evidence of innocence and the truth of their own misconduct.

276. Upon information and belief, Defendants London and other John Doe supervisors of the individual Defendants in this case, acting in their individual capacities, failed to take due care in supervising the investigative practices of the individual Defendants.

In further support of each of the five § 1983 claims, Plaintiff makes the following collective allegations against the Defendants sued in their individual capacities, namely, Dillmann, Rice, and London.

First, as to his deprivation of liberty claim, Plaintiff alleges that all individual Defendants

improperly fabricated false confessions to the murders of William Hines and Rodney Robinson, which they later coerced Mr. Floyd into signing; fabricated false evidence to support the coerced confessions; suppressed exculpatory evidence that would have contradicted the false confessions, . . . and instead followed through with the unlawful prosecution of Mr. Floyd.[13]

Plaintiff elaborates each of these allegations with specific facts from the case but never mentions Defendant London individually.

---

[13] Doc. 1, ¶ 178.

Second, as for his unlawful seizure claim, Plaintiff alleges that the individual Defendants arrested, detained, and prosecuted him even though they knew they had no probable cause to do so. Plaintiff also alleges that Defendants willfully or recklessly ignored exculpatory evidence and evidence incriminating other suspects. Plaintiff's Complaint specifies the evidence that Defendants allegedly ignored, but it does not mention Defendant London by name or describe his specific role in these violations.

Third, Plaintiff brings a failure to intervene claim against all individual Defendants, alleging that even though they had the opportunity to intervene to prevent violations of Plaintiff's constitutional rights, Defendants failed to do so. Plaintiff only makes this sole collective allegation in support of the failure to intervene claim.

Fourth, with respect to his conspiracy claim against all individual Defendants, Plaintiff alleges that "Dillmann, Rice, John Doe Latent Print Unit analyst, and others yet unknown" agreed with others to act in concert to deprive Plaintiff of his constitutional rights.[14] Plaintiff lists the overt acts of the conspiracy committed by "Defendants," though London is not referenced specifically.[15]

Finally, Plaintiff brings a supervisory liability claim against London and "John Doe Supervisors."[16] Plaintiff alleges that London and other unknown supervisors were personally involved in Plaintiff's case and knew or should have known that their subordinate officers had deprived Plaintiff of his

---

[14] *Id.* at ¶ 211.
[15] *Id.* at ¶ 212.
[16] *Id.* at ¶ 215.

constitutional rights. Plaintiff alleges that London failed to supervise his subordinate officers and allowed them to act with impunity, which led to the deprivation of Plaintiff's constitutional rights.

The parties dispute whether these collective allegations that lump together multiple individuals are sufficient to allege a claim against London in particular. In *Cain v. City of New Orleans*, another section of this Court encountered this same issue.[17] There, the Court noted that the plaintiffs' complaint "directs its allegations not towards the City, or any other individual or entity, but towards 'defendants' as a group."[18] The Court explained that "[t]his pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions."[19] "Because the notice pleading requirement[s] of the Federal Rules of Civil Procedure entitle 'each defendant...to know what he or she did that is asserted to be wrongful,' allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[20]

---

[17] NO. 15-4479, 2016 WL 2849478 (E.D. La. May 13, 2016) (Vance, J.).

[18] *Id.* at *4.

[19] *Id.* at *5.

[20] *Id.* (quoting Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013)); *see also* Tilson v. DISA, Inc., CIVIL ACTION 17-240, 2019 WL 208871, at *2 (M.D. La. Jan. 15, 2019); Angelle v. Town of Duson, No. 6:18-cv-00272, 2018 WL 4649788, at *9 (W.D. La. Aug. 7, 2018) (citing *Cain* and concluding that "allegations in the complaint related to the constitutional violations under § 1983 as well as state law fail to make clear exactly who is alleged to have done what to whom"); Zola H. v. Snyder, No. 12-14073, 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (dismissing complaint that lumped defendants together and failed "to impute concrete acts to specific litigants"); Petri v. Kestrel Oil & Gas Properties, L.P., No. CIV.A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011).

Here, the Court reaffirms and reapplies its reasoning in *Cain*. In support of the first and second § 1983 claims, Plaintiff charges all individual Defendants with coercing a confession, fabricating statements, suppressing exculpatory evidence, and pursuing arrest and prosecution without probable cause. Just as in *Cain*, these collective allegations prevent the Court from discerning whether Defendant London is charged with any, some, or all of these constitutional violations. This is especially true given the factual background provided by Plaintiff's Complaint, which never once specifies or elaborates on London's involvement in Plaintiff's case. Plaintiff's third § 1983 claim—failure to intervene—suffers from this same defect, as it consists of a single collective, conclusory allegation.

Plaintiff's conspiracy claim is similarly ambiguous as to whether and to what extent it applies to Defendant London. Plaintiff first identifies a number of conspirators—save London—by name: Dillmann, Rice, Officer John Reilly, Detective Fred Dantagnan, Sergeant Paul Drouant, and Detective Martin Venezia. Plaintiff then attributes various overt acts in furtherance of the conspiracy to "Defendants," collectively. While London is a defendant and thus appears to be implicated in Plaintiff's list of overt acts, there is no allegation that London was part of any agreement. Thus, it seems that Plaintiff has charged London with furthering a conspiracy to which he was not a party. Moreover, the overt acts are alleged collectively, just like the allegations discussed above, meaning it is unclear if London engaged in one, some, or all of them. For example, the allegation of "fail[ing] to investigate leads pointing to other suspects and corroborating Mr. Floyd's innocence" is ostensibly leveled

at London (among others), but reading it as such does not square with Plaintiff's recitation of the facts. It was Dillmann and Rice, not London, who investigated the Hines and Robinson murders, according to Plaintiff.

Plaintiff's final § 1983 claim—supervisory liability—contains a hair more factual content as to Defendant London, but not enough to meet the *Twombly-Iqbal* pleading standard. While Plaintiff avers that "London and John Doe Supervisors were personally and directly involved in the case against Mr. Floyd," he fails to say how they were so involved.[21] Plaintiff then goes on to state in a conclusory fashion that London knew or should have known that certain subordinate officers had violated Plaintiff's rights.[22] "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."[23] Plaintiff purports to allege that "London, as the acting Lieutenant of the NOPD . . . oversaw the investigation of the Hines and Robinson murders."[24] The Court cannot locate such an allegation, however. Plaintiff states that "Defendant Stephen London was at all times relevant herein *a* duly appointed and acting Lieutenant," but not that he oversaw the Hines and Robinson investigations.[25] Similarly, Plaintiff merely implies that London acted as supervisor to Detectives Dillmann and Rice, but that does not mean he was involved in or even knew of their treatment of Plaintiff.

The Fifth Circuit has made it clear that "[i]n order to state a cause of action under section 1983, the plaintiff must identify defendants who were

---

[21] Doc. 1, ¶ 215.

[22] *See id.*

[23] *Iqbal*, 556 U.S. at 664.

[24] Doc. 144 at 11.

[25] Doc. 1, ¶ 28 (emphasis added).

either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[26] "It is not enough to allege that government officials with no direct contact with a plaintiff are responsible for acts of their subordinates."[27] Here, Plaintiff fails to specify—individually, factually, and in a non-conclusory fashion—how London was involved in or causally connected to any constitutional violations. Thus, the Court finds that Plaintiff's Complaint, as it stands, fails to state a claim against London. "[U]nless futile, courts generally allow one chance to amend deficient pleadings before dismissing with prejudice."[28] The Court finds that amendment in this case would not be futile. Accordingly, the Court grants Plaintiff leave to amend his Complaint in order to attempt to remedy the deficiencies identified herein.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion is **GRANTED**. **IT IS ORDERED** that Plaintiff is given leave to file an amended complaint to attempt to fix the deficiencies identified in this Order.

**IT IS FURTHER ORDERED** that Plaintiff must file his amended complaint, if any, within 15 days of the date of this Order.

---

[26] Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995) (citing Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983)).

[27] Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999) (citing *Woods*, 51 F.3d at 583).

[28] Buc-ee's, Ltd. v. Bucks, Inc., 262 F. Supp. 3d 453, 467 (S.D. Tex. 2017) (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)).

New Orleans, Louisiana this 13th day of July, 2022.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**