## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JD FLOYD**                                                    **CIVIL ACTION**

**VERSUS**                                                      **NO: 19-8769**

**JOHN DILLMANN ET AL.**                                        **SECTION: "H"**

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Jason Williams's Motion to Dismiss (Doc. 166). For the following reasons, the Motion is **DENIED**.

## <u>BACKGROUND</u>

This case arises out of Plaintiff JD Floyd's wrongful conviction and imprisonment for the murder of William Hines, Jr. Among others claims, Plaintiff brings a claim for municipal liability under 42 U.S.C. § 1983 against Defendant District Attorney Jason Williams in his official capacity as the Orleans Parish District Attorney ("OPDA"). Plaintiff alleges that the OPDA is liable under § 1983 for adopting and maintaining constitutionally deficient *Brady* policies. In this Motion, Defendant Williams moves for dismissal of the claims against the OPDA, arguing that it was acting on behalf of the State in

prosecuting state law crimes and therefore cannot be liable under § 1983. Plaintiff opposes.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

## LAW AND ANALYSIS

Section 1983 authorizes suits for damages against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] Id.

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[4] Iqbal, 556 U.S. at 678.

[5] Id.

[6] Lormand, 565 F.3d at 255–57.

[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "Municipalities, which include counties and certain other local governmental bodies, are 'persons' under Section 1983."[8] However, it is well settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[9] To state an official capacity claim against a municipality, Plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[10]

The parties dispute which governmental entity the OPDA represented when it allegedly failed to enact constitutionally sufficient *Brady* policies and therefore whether it can be liable under § 1983. Courts have recognized that policymakers may "wear more than one hat" and sometimes act for the State and sometimes for a local governmental entity.[11] The Supreme Court advised in *McMillian v. Monroe County* that courts should look to state law to determine "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."[12] Plaintiff contends that under Louisiana law and binding Fifth Circuit precedent in *Burge v. Parish of St. Tammany* the OPDA office acted as an independent local governmental entity in failing to enact constitutionally sufficient *Brady* policies.[13] In this Motion, Defendant argues that two recent Fifth Circuit cases suggest otherwise. Defendant relies on the Fifth Circuit's 2022 en banc opinion in *Daves v. Dallas County* and panel decision in *Arnone v. Dallas County* to

---

[8] Daves v. Dallas Cnty., Texas, 22 F.4th 522, 532 (5th Cir. 2022).
[9] Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).
[10] Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir.2009).
[11] Arnone v. Cnty. of Dallas Cnty., Texas, 29 F.4th 262, 266 (5th Cir. 2022).
[12] McMillian v. Monroe Cnty., Ala., 520 U.S. 781, 786 (1997).
[13] Burge v. Par. of St. Tammany, 187 F.3d 452, 468 (5th Cir. 1999).

3

argue that the OPDA was acting as an arm of the State in prosecuting state law crimes, and therefore Plaintiff's § 1983 claim against it should be dismissed.[14]

In *Daves*, the en banc Fifth Circuit considered whether Dallas County judges establishing a bail schedule for their court were acting for Texas or Dallas County.[15] In reliance on the Supreme Court's 1997 decision in *McMillian*, the court stated that the question should be answered by looking to state law as applied to the specific function at issue.[16] It summarized that "*McMillian* holds we examine function, not funding, when deciding whether an official is acting for the state or local government in a case brought pursuant to Section 1983."[17] The court then looked to the Texas Constitution and Texas law to reach its decision.[18] It concluded that "the state constitution and statutes compel a finding that defendant County Judges act for the state at times," and the "creation of a bail schedule is one of those times."[19] It held that the creation of a bail schedule was a judicial act for the State because bail is a right granted by the state constitution and the process for determining bail is controlled by state law.[20] It therefore held that the county judges could not create liability for Dallas County under § 1983 for their actions in creating a bail schedule.[21]

In *Arnone*, decided shortly after *Daves*, a panel of the Fifth Circuit considered whether the district attorney that allegedly enacted an unconstitutional polygraph test policy was a county policymaker such that

---

[14] *Daves*, 22 F.4th at 532; *Arnone*, 29 F.4th at 266.
[15] *Daves*, 22 F.4th at 532.
[16] *Id.*
[17] *Id.* at 533.
[18] *Id.*
[19] *Id.* at 534.
[20] *Id.*
[21] *Id.* at 540.

Dallas County could be liable under § 1983.[22] Applying *McMillian*, the court looked first to the Texas Constitution, which provides that the Texas legislature has a direct role in regulating prosecutorial duties and compensation for district attorneys.[23] It also cited to statutory and case law stating that district attorneys represent Texas in criminal prosecutions.[24] The Fifth Circuit ultimately held:

> Texas law therefore points one way in this case: district attorneys act for the state when they decide to seek revocation of probation or deferred adjudication. A policy governing when to exercise that power in the future—whether because of a polygraph result, or not—is inextricably linked to that use of state power, just like it was in *Daves*. Therefore, the Dallas County district attorney acted as a state policymaker when he decided or acquiesced to the polygraph policy in this case.[25]

Defendant argues that the analyses of *Daves* and *Arnone* suggest that here too the OPDA was acting for the State in promulgating *Brady* policies. He compares the Texas constitutional provisions and laws discussed in those cases to Louisiana's constitutional provisions and laws. Among other things, he notes that the Louisiana Constitution recognizes district attorneys as members of the state judicial branch and gives them responsibility over every criminal prosecution by the State in their district. Defendant points out that Louisiana statutory law provides that the OPDA "shall have charge of every criminal prosecution by the State" in Orleans Parish and shall "represent the State in all matters" in Juvenile Court.[26] He argues that the considerations that led the Fifth Circuit to its conclusions in *Daves* and *Arnone* are arguably even more compelling here.

---

[22] *Arnone*, 29 F.4th at 266.
[23] *Id.* at 268–69.
[24] *Id.*
[25] *Id.* at 269–70.
[26] La. Rev. Stat. § 16:1.

Unfortunately for Defendant, the Fifth Circuit has already foreclosed a holding that a district attorney is acting for the State in creating *Brady* policies under Louisiana law. In *Burge v. Parish of St. Tammany*, the plaintiff alleged that the St. Tammany Parish District Attorney violated his constitutional rights by failing to promulgate and implement policies, training, and procedures to assure that all *Brady* evidence was disclosed to the defense.[27] In considering the plaintiff's claim for municipal liability, the Fifth Circuit considered "what entity is liable under § 1983 in an official capacity suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants."[28] The court outlined the analysis as set forth in *McMillian* and acknowledged that "[t]he Supreme Court's cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are policymakers for the local government in a particular area, or on a particular issue, and that our inquiry is dependent on an analysis of state law."[29] In reaching its decision, it considered provisions of the Louisiana Constitution, which provide "that a district attorney has charge of every criminal prosecution by the State in his district, and is the representative of the State before, and legal advisor to, the grand jury."[30] It looked to Louisiana statutes outlining a district attorney's powers and duties and discussed case law regarding the liability of a local government entity for the torts of its employees.[31] It discussed the fact that the district attorney is not entitled to Eleventh Amendment immunity and that he is an autonomous local government official.[32] The court ultimately held that

---

[27] *Burge*, 187 F.3d at 458.
[28] *Id.* at 469.
[29] *Id.* at 468.
[30] *Id.* at 469.
[31] *Id.* at 469–70.
[32] *Id.* at 469.

"[c]onsidering the Louisiana constitutional and statutory law and tort cases, we conclude that, in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity."[33] Accordingly, *Burge* forecloses Defendant's argument here.[34]

In this Motion, Defendant suggests that the *Daves* court did a better job applying *McMillan* than the *Burge* court. He argues that the court in *Burge* considered factors—such as Eleventh Amendment immunity, vicarious liability, and the attorney's autonomy and independence—that the *Daves* and *Arnone* courts held were not important or controlling on the questions before them. He argues that the *Burge* court gave insufficient weight to what *Daves* considered "most relevant"—that is, the constitutional provisions, statutes, and case law holding that district attorneys are state officials empowered to prosecute state law crimes on behalf of the State. Even assuming that Defendant's characterization of the *Burge* opinion has merit, this Court is not any less bound by the holding of *Burge*.

Further, this Court does not agree with Defendant that *Daves* overrules *Burge*.[35] Both *Daves* and *Burge* purport to apply the analysis set forth by the

---

[33] *Id.* at 470.

[34] Even assuming, as Defendant suggests, that *Burge* does not squarely answer the question of whether a district attorney acts for the State or the local government when he creates *Brady* policies, the holding of *Burge* does not leave this Court any room to reach a contrary result. For example, this Court cannot say that a district attorney is acting on behalf of the State in enacting *Brady* policies and therefore cannot be liable under § 1983 without undermining Burge's holding that a district attorney can be liable under § 1983 as a local entity for its unconstitutional *Brady* policies.

[35] Defendant does not argue that *Arnone*, a panel decision, overrules *Burge*, an earlier panel decision. It is well-settled that a panel cannot overrule an earlier panel. Grabowski v. Jackson Cnty. Pub. Defs. Off., 47 F.3d 1386, 1397 (5th Cir. 1995), *on reh'g en banc*, 79 F.3d 478 (5th Cir. 1996).

Supreme Court in 1997 in *McMillan*. And the Fifth Circuit in *Arnone* confirms that the "controlling Supreme Court decision on the dual-hat problem is *McMillian*."[36] In *McMillian*, the Supreme Court considered whether Alabama sheriffs were policymakers for the State or the county when they acted in a law enforcement capacity.[37] It explained that courts must look to state law to determine "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."[38] The Court instructed that an "understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."[39] The *McMillian* Court then looked to the Alabama Constitution, the Alabama Code, and Alabama Supreme Court cases to reach its opinion.[40]

 *Daves* and *Burge*, as discussed above, each cite to *McMillian* and purport to perform the same analysis. And *McMillan* is clear that the question to be considered is what *state* law provides as to the specific relevant function being challenged.[41] The court in *Daves* applied Texas law to Texas policymakers performing different functions than are at issue here. Accordingly, *Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy. Further, in an unpublished per curiam decision released after *Daves*, the Fifth Circuit relied on *Burge* for the proposition that a district attorney acted as an arm of

---

[36] *Arnone*, 29 F.4th at 266.
[37] *McMillian*, 520 U.S. at 785.
[38] *Id.*
[39] *Id.* at 786.
[40] *Id.* at 786–96.
[41] *Id.* at 786 ("[O]ur inquiry is dependent on an analysis of state law.").

the parish for the purposes of a § 1983 claim.[42] Accordingly, this Court does not find that *Daves* overruled *Burge*.

The Fifth Circuit in *Burge* applied Supreme Court law to reach a holding that forecloses this Court from reaching a contrary result here. Because this Court is bound by *Burge*, the Motion is denied.

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

New Orleans, Louisiana this 6th day of March, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[42] Kimble v. Jefferson Par. Sheriff's Off., No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (quoting *Burge* for the proposition that for official capacity suits under § 1983 "the district attorney's office resembles other local government entities").